UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| KERRY BOULTON,<br><br>                Plaintiff,<br><br>vs.<br><br>AMERICAN TRANSFER SERVICES, INC., a Delaware corporation; RUBEN SANCHEZ, an individual; ANA GUERRA DURAN, an individual; and DOES 1-50, inclusive<br><br>                Defendants. | CASE NO. 15cv462-GPC(RBB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>[Dkt. No. 34.] |
|---|---|

Before the court is Plaintiff's motion for leave to file a second amended complaint. (Dkt. No. 34.) Defendants have not filed an opposition. Based on the reasoning below, the Court DENIES Plaintiff's motion for leave to file a second amended complaint.

**Procedural Background**

On March 2, 2015, Plaintiff Kerry Boulton ("Plaintiff") filed a complaint[1] against Defendants American Transfer Services, Inc. ("ATS"), Ruben Sanchez ("Mr. Sanchez") and his wife, Ana Guerra De Sanchez ("Mrs. Sanchez") as principals of

---

[1] The Court notes that on January 24, 2014, Plaintiff, with different counsel, filed a complaint, in case no. 14cv175-GPC(RBB), based on the same facts which was dismissed by stipulation of the parties on February 17, 2015.

ATS, alleging state law causes of action for fraud, conversion, violation of Penal Code section 496 and money had and received. (Dkt. No. 1.) On May 5, 2015, the Court granted Defendants' motion to dismiss with leave to amend. (Dkt. No. 8.) An amended complaint was filed on May 18, 2015 against ATS, Mr. Sanchez and Mrs. Sanchez alleging eight state law causes of action for intentional and negligent misrepresentation, violation of California Business & Professions Code section 17200, negligence, conversion, unjust enrichment, breach of fiduciary duty, and conspiracy. (Dkt. No. 11.) On July 21, 2015, the Court granted in part and denied in Defendants' motion to dismiss and dismissed all claims against Mrs. Sanchez. (Dkt. No. 17.) On August 4, 2015, Defendants ATS and Mr. Sanchez filed an answer to the amended complaint. (Dkt. No. 18.) Thereafter, on August 5, 2015, defense counsel filed a motion to withdraw as attorney which was granted on September 1, 2015. (Dkt. Nos. 19, 24.) Since then, Defendants ATS and Mr. Sanchez have not appeared in the case and the Court's mail to them have been returned as undeliverable. (Dkt. Nos. 37-39.)

On November 19, 2015, Plaintiff filed a motion for leave to file a second amended complaint along with a proposed second amended complaint. (Dkt. Nos. 34, 34-2.) She seeks to add four additional named plaintiffs, Ane Marie Lacy, William Gamba, Luca Angelucci and Jeremy Andrews, that have been defrauded by Defendants in a similar manner.

**Factual Background**

According to the first amended complaint ("FAC"), Plaintiff is a resident of Melbourne, Australia. (Dkt. No. 11, Am. Compl. ¶ 2.) In August 2013, Plaintiff attended a webinar about purchasing tax deeds and/or tax liens on real property situated in the United States as investments. (Id. ¶ 14.) During the webinar, Plaintiff alleges that she was introduced to Mr. Sanchez/ATSI.[2] (Id. ¶ 15.) Defendants represented that

---

[2] The Court follows Plaintiff's use of "Mr. Sanchez/ATSI" and "Mrs. Sanchez/ATSI" to refer to Mr. Sanchez or Mrs. Sanchez as both individual defendants, and representatives of ATSI as required in a fraud action against a corporation under Federal Rule of Civil Procedure ("Rule") 9(b). See Tarmann v. State Farm Mut. Auto. Ins., 2 Cal. App. 153, 157 (1991).

"ATSI is an exclusive service provider capable of assisting foreign persons with creating legal business entities for the purpose of investing in real property that is subject to tax liens and/or deeds within the United States." (Id. ¶ 16.) Based on their representations, Plaintiff decided to allow Defendants to assist her with prospective investments. (Id.)

The FAC further alleges that around August 29, 2013, Mr. Sanchez/ATSI sent Plaintiff a "U.S. Business Start-up" application ("Agreement") stating that Defendants would provide Plaintiff with the following services: "(1) Business entity formation; (2) personalized EIN; (3) U.S. Banking Services (a separate bank account to hold Ms. Boulton's funds); and (4) a U.S. mailing address." (Id. ¶ 17.) Around August 30, 2013, Plaintiff paid the $695.00 service fee by credit card to Defendants Mr. Sanchez/ATSI pursuant to the Agreement. (Id. ¶ 18.) The money was deposited directly into the merchant account belonging to Defendants Mrs. Sanchez/ATSI. (Id.)

Around September 19, 2013, Defendants Mr. Sanchez/ATSI sent Plaintiff an application, in order to set up Plaintiff's separate bank account, providing instructions to wire $1,000.00 to a Bank of America account ending in 4187. (Id. ¶ 19-20.) Mr. Sanchez/ATSI informed Plaintiff that the account was designated solely for incoming wire transfers. (Id. ¶ 21.) Defendants Mr. Sanchez/ATSI informed Plaintiff that once Mr. Sanchez/ATSI had received the funds, they would create a separate bank account and transfer the wired monies, for the sole benefit of Plaintiff, "to facilitate her bidding on real property within the U.S. subject to tax liens and/or deeds." (Id.) Each Defendant represented to Plaintiff that her funds would be kept in a separate account until Plaintiff provided further instructions. (Id. ¶ 22.)

Around October 16, 2013, Plaintiff inquired with each Defendant to determine whether they had received Plaintiff's $1000 wire transfer and whether they had set up her separate bank account. (Id. ¶ 23.) Around October 17, 2013, Defendants Mr. Sanchez/ATSI confirmed receipt of $1,000 to Defendants Mrs. Sanchez/ATSI's account ending in 4187. (Id. ¶ 24.) They said they would "provide an account number

for [Plaintiff's] 'separate account' shortly" and reminded Plaintiff to send all future wires to the same account Plaintiff had sent the initial $1,000. (Id.)

Around November 2013, Plaintiff discovered real property located in the County of Miami-Dade in Florida that was subject to a tax deed and/or tax lien that she wished to purchase as an investment. (Id. ¶ 25.) She informed Defendants of her intention to bid at the online auction for the property and explained to Mr. Sanchez/ATSI that she intended to wire $155,000 to them for the sole purpose of using these funds to participate in the online auction. (Id. ¶¶ 25-26.) Mr. Sanchez/ATSI confirmed they would carry out Plaintiff's request and instructed her to wire transfer $155,000 to the same Bank of America account ending in 4187. (Id. ¶ 27.) Around November 17, 2013, Plaintiff completed the wire transfer, bringing the total funds transferred to Defendants to $156,000. (Id. ¶ 28.)

Around November 18, 2013, Plaintiff instructed Mr. Sanchez/ATSI to deposit $7,500 with the Miami-Dade County Clerk of Court in order to allow her to participate in the purchasing of the property. (Id. ¶ 29.) Mr. Sanchez/ATSI confirmed he would complete this request. (Id. ¶ 30.) Shortly after, Plaintiff accessed her online "Miami-Dade Clerk foreclosure and Tax Deed Sales" account and discovered that Defendants had failed to make the requested deposit of $7,500 and that her account reflected a balance of $0. (Id. ¶ 31.) Around November 20, 2013, Plaintiff contacted Mr. Sanchez/ATSI concerning the status of her deposit and he informed her that the funds would "be out the same day." (Id. ¶ 32.) Around November 21, 2013, Defendants produced a transfer receipt of $7,500 from ATSI to the Miami-Dade County Clerk of Court. (Id. ¶ 33.) Plaintiff later learned the transfer receipt was forged when she contacted the Miami-Dade County Clerk of Court and was informed there was no record of any money received from, or on behalf of, Plaintiff. (Id. ¶ 34.)

Upon learning this, Plaintiff immediately contacted Mr. Sanchez/ATSI and demanded an explanation. (Id. ¶ 35.) However, Defendants terminated all communications with Plaintiff by refusing to respond to all attempts of correspondence.

1  (Id.) Plaintiff repeatedly demanded the return of her money, but Defendants have
2  refused to return the $156,000 obtained from Plaintiff.  (Id. ¶ 36.)

### Discussion

In ruling on a motion to join additional plaintiffs, the court "must consider both the general principles of amendment provided by Rule 15(a)[3] and also the more specific joinder provisions of Rule 20(a)."  Hinson v. Norwest Fin. So. Carolina, Inc., 239 F.3d 611, 618 (4th Cir. 2001) (citing Desert Empire Bank v. Ins. Co., 623 F.2d 1371, 1374 (9th Cir. 1980) (noting that both Rule 15 and Rule 20 standards are implicated by a motion to amend pleadings to add a new party)).

In her motion, Plaintiff only addresses Rule 15(a) in arguing that the Court should grant leave to allow an amended complaint to add four additional plaintiffs.

### A.    Federal Rule of Civil Procedure 15

Under Federal Rule of Civil Procedure ("Rule") 15(a), leave to amend a complaint after a responsive pleading has been filed may be allowed by leave of the court and "shall freely be given when justice so requires."  Foman v. Davis, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a).  Granting leave to amend rests in the sound discretion of the trial court.  Internat'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines, 761 F.2d 1386, 1390 (9th Cir. 1985).  This discretion must be guided by the strong federal policy favoring the disposition of cases on the merits and permitting amendments with "extreme liberality."  DCD Programs Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).  "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties."  Id.; but see Union Pacific R.R. Co. v. Nevada Power Co., 950 F.2d 1429, 1432 (9th Cir. 1991) (In practice, however, courts more freely grant plaintiffs leave to amend pleadings in order to add claims than new parties).

Because Rule 15(a) favors a liberal policy, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted.  Genentech, Inc. v. Abbott

---

[3]Federal Rule of Civil Procedure

1  Labs., 127 F.R.D. 529, 530-31 (N.D. Cal. 1989). In assessing the propriety of an
2  amendment, courts consider several factors:  (1) undue delay, (2) bad faith or dilatory
3  motive; (3) repeated failure to cure deficiencies by amendments previously permitted;
4  (4) prejudice to the opposing party; and (5) futility of amendment. Foman, 371 U.S. at
5  182; United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011).  These
6  factors are not equally weighted; the possibility of delay alone, for instance, cannot
7  justify denial of leave to amend, DCD Programs, 833 F.2d at 186, but when combined
8  with a showing of prejudice, bad faith, or futility of amendment, leave to amend will
9  likely be denied. Bowles v. Reade, 198 F.2d 752, 758 (9th Cir. 1999). The single most
10 important factor is whether prejudice would result to the non-movant as a consequence
11 of the amendment.  William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,
12 668 F.2d 1014, 1053 (9th Cir. 1981).

13 Plaintiff claims that Defendants will not be prejudiced because the case is still
14 in the early stages as discovery has not yet commenced and the amendment will not
15 alter any of the causes of action.  In addition, she asserts that she acted in good faith
16 and has timely moved to amend without undue delay as no deadlines have been set by
17 the Court.  Lastly, Plaintiff argues that the proposed amendment is not futile since the
18 Court has previously concluded that Plaintiff has stated a cause of action on her claims.
19 After a review of the proposed second amended complaint, Plaintiff's argument, and
20 no opposition having been filed by Defendants, the Court concludes that Plaintiff has
21 demonstrated that leave to file a second amended complaint would be appropriate
22 under Rule 15(a). However, the Court must also consider Rule 20(a)(1) in determining
23 whether leave should be granted to join additional plaintiffs.  See Hinson, 239 F.3d at
24 618.

25 **B.    Federal Rule of Civil Procedure Rule 20(a)(1)**

26 Under the Federal Rules of Civil Procedure, "joinder of claims, parties and
27 remedies is strongly encouraged." United Mine Workers of America v. Gibbs, 383
28 U.S. 715, 724 (1966). Under Rule 20(a)(1), permissive joinder of plaintiffs is proper

if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Rule 20 is to be construed liberally to promote judicial economy and trial convenience. League to Save Lake Tahoe v. Tahoe Regional Planning Agency, 558 F.2d 914, 917 (9th Cir. 1977) (citing Mosley v. Gen. Motors, 497 F.2d 1330, 1332-33 (8th Cir. 1974)). "The 'same transaction' requirement of Rule 20 refers to 'similarity in the factual background of a claim; claims that arise out of a systematic pattern of events' and have a 'very definite logical relationship.'" Hubbard v. Hougland, No. 09-0939, 2010 WL 1416691, at *7 (E.D. Cal. Apr. 5, 2010) (quoting Bautista v. Los Angeles County, 216 F.3d 837, 842-43 (9th Cir. 2000)). However, "even once [the Rule 20(a)] requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." Coleman v. Quaker Oats Company, 232 F.3d 1271, 1296 (9th Cir. 2000) (citing Desert Empire Bank v. Ins. Co. of North America, 623 F.2d 1371, 1375 (9th Cir. 1980)). As to whether the joinder comports with the principles of fundamental fairness or would result in prejudice, courts consider "the possible prejudice that may result to any of the parties in the litigation, the delay of the moving party in seeking an amendment to his pleadings, the motive that the moving party has in seeking such amendment, the closeness of the relationship between the new and the old parties, the effect of an amendment on the court's jurisdiction, and the new party's notice of the pending action." Desert Empire Bank, 623 F.2d at 1375.

      Plaintiff fails to address Rule 20, including whether the facts arise out of the "same transaction, occurrence, or series of transactions or occurrences." See Fed. R. Civ. P. 20(a)(1); see also Papagiannis v. Pontikis, 108 F.R.D. 177, 179 (N. D. Ill. 1985) (joinder rule did not apply to two victims' wholly separate encounters with man simply because he followed the same routine in cheating each of them). Moreover, Plaintiff

does not address whether the statute of limitations may bar the causes of action of these additional plaintiffs.[4]  See Allied Chemical Corp. v. Strouse, Inc., 53 F.R.D. 588, 589-90 (E.D. Pa. 1971) (denying motion for joinder of additional defendant as no prejudice will result to additional defendant since cause of action was barred by the statute of limitations).  Because Plaintiff failed to address the elements to support a Rule 20 motion, the Court DENIES Plaintiff's motion for leave to file a second amended complaint.

**Conclusion**

The Court DENIES Plaintiff's motion for leave to file a second amended complaint adding four additional named plaintiffs.  The hearing date set for January 15, 2016 shall be **vacated.**

IT IS SO ORDERED.

DATED:  January 13, 2016

HON. GONZALO P. CURIEL
United States District Judge

---

[4] Many of the allegations of the additional plaintiff in the proposed second amended complaint occurred in early to mid 2013. (Dkt. No. 34-2, Proposed SAC.)